McKinney, J.,
delivered the opinion of the Court.
The bill was dismissed on demurrer. The substance <df the bill is, that complainant’s testator, F. L. Saunders, died on the 17th of June, 1857: That for some time previous to his death, a mercantile business had been conducted by him and one J. A. Pierce, in co-partnership, under the firm of Saunders & Pierce: That .after testator’s death, the defendants, as creditors of said ■.firm, severally recovered judgments against the surviving partner and the complainant, as representative of the deceased partner, jointly, for about the sum of $1500; 'That executions, upon said judgments, had been issued, •and were levied on six slaves,' the individual property of the testator at his death, and were the property of the .legatees under his will.
The bill further charges, that the assets of the firm *579 have not been exhausted, and that more than sufficient remain to discharge said judgments and all the liabilities of the firm.
The ground of equity assumed in the bill is, that the individual property of the ‘estate of Saunders, or of his legatees, is not subject to the satisfaction of said judgments, until after the partnership effects shall have been exhausted. And the prayer of the bill is, that the sale of said slaves shall be enjoined, and the creditors fee restrained from proceeding-against the separate property of the deceased partner’s estate; at least until after the firm assets shall have been exhausted.,
The bill is brought a.gainst the creditors alone, the surviving partner, and the legatees under the will of the deceased partner, are not made - parties.
The bill is extremely defective. It is framed upon an erroneous conception of the rights of the parties, and passes by the only point of equity that could be made, upon the- facts stated.
It is true, that, by the common law, upon the death of a partner, the legal remedies against him, in respect of partnership contracts and liabilities, are extinguished. The partnership creditors cannot sue his personal representative, and have no remedy, except against the surviving partner, for their' debts. But it is^ otherwise in equity, according to the modern decisions. In equity, partnership debts are looked upon as joint and several liabilities; and, consequently, the joint creditors have, in all cases, an election, either to proceed at law against the survivor, or in equity against the estate of the deceased partner. And this is so, whether the survivor be solvent, or bankrupt. Hence, the joint creditors *580 are not required to wait until the partnership affairs are wound up, and a final adjustment thereof is made, but may proceed at once, as upon a joint and several contract, in equity, against the separate estate of the deceased partners, leaving it to the representative of the deceased partner and the survivor, to adjust the partnership accounts between themselves. Story on Part., sec. 362; 1 Mylne and Keen, 682.
The common law doctrine upon this subject, however, was modified by the act of 1789, ch. 57, sec. 5. By that statute, all “ obligations or assumptions of co-partners ” are declared to be joint and several; and to survive against the personal representative of the deceased partner, as well as against the surviving partner. The necessary effect of this enactment is, to give the joint creditors the same remedies, at law, against the estate of the deceased partner, which they were entitled to in equity. They may proceed to obtain judgment. against the survivor and the representative of the deceased partner, jointly, or, at their election, against either, separately. So, they' may proceed to enforce satisfaction against either. And of this neither can complain. If the representative of the deceased partner is subjected to the payment of firm debts, he can call upon the surviving partner to reimburse him out of the joint fund, if upon an adjustment of the partnership accounts ■ a balance shall he found in his favor; and so, if the surviving partner has been subjected beyond his just proportion, he may require the representative of the deceased partner to contribute. But neither can require a joint creditor to wait for an adjustment of the partnership accounts.
*581 Thus far, there is ne equity in the bill. But it has been repeatedly determined by this Court, that, since the passage of the act of 1827, eh. 61, the title to slaves does not, as formerly, pass to the personal representative, but vests directly in the distributees or legatees, as the ease may be, subject, however., to he made liable for the debts of the estate, by the personal representative. Savage v. Hale & Coggin, 1 Sneed, 365; Elliott v. Cochran, 2 Sneed, 468. In the former case, it is laid down that slaves pass to the distributees, in like manner, as lands go to the heirs. From this it of necessity results, that the slaves cannot he seized and sold upon an execution at law against the personal representative.
It is equally well settled, that in proceeding to subject slaves to the satisfaction of the debts of the estate, the personal representative must pursue the act of 1827. And, although the act does not, in terms, extend to creditors, yet we think that, upon an equitable construction of the statute, the creditors, in the present case, might proceed to subject the slaves to the satisfaction of their debts. But in doing so, they must make the ■distributees or legatees, together with the personal representative, parties to such proceeding.
In any aspect of the case, however, the bill cannot be maintained in its present shape. As a hill merely to enjoin the sale of the slaves, upon executions at law, the legatees, in whom the legal title is vested, ought to have been parties; and as a proceeding, by the personal representative, to subject the slaves to the payment of debts, the legatees were likewise necessary parties.
*582 The decree allowing the demurrer must, therefore, he affirmed: but the cause will be remanded with leave to make all such amendments as may be deemed proper and necessary.